**Abraham KAPLAN, Administrator, C. T. A. of the Estate of Nat Gluck, Deceased, Plaintiff Below, Appellant,**

**v.**

**Martin FENTON, Jr., et al., Defendants Below, Appellees.**

Supreme Court of Delaware.

June 2, 1971.

Irving Morris, of Cohen, Morris & Rosenthal, Wilmington, Sidney B. Silverman and Jewel H. Bjork, New York City, for appellant; Henry M. Canby, of Richards, Layton & Finger, Wilmington, for Christiana Oil Company, Antonow, Fink, Gunther & Epstein, Chicago, Ill., of counsel.

S. Samuel Arsht, of Morris, Nichols, Arsht & Tunnell, Wilmington, for certain defendants; Richard F. Corroon, of Potter, Anderson & Corroon, Wilmington, for certain defendants.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

This is an appeal from an order of the Court of Chancery dismissing the complaint in a stockholders' derivative action. The action was brought on behalf of

Christiana Oil Company against the directors of Christiana and individuals who formerly owned Class B stock of Huntington Harbor Corporation.

Huntington owned a tract of low undeveloped land near Los Angeles, California. It had outstanding 40,000 shares of Class A and 10,000 shares of Class B stock. In 1960 Christiana acquired all of the Huntington Class A stock in consideration of 350,000 shares of Christiana.

Christiana agreed to advance to Huntington not in excess of $733,000 and to lend it up to $500,000 on a demand basis. In point of fact, Christiana exceeded its commitment to Huntington and by June 30, 1963 Huntington was indebted to Christiana in the amount of $5,168,608.09. No interest was paid Christiana, but was accrued to its account.

The money from Christiana was used in the development of the principal asset of Huntington, the land. No Class B stockholder loaned or advanced any money to Huntington, but all of them shared in the benefit of the virtually interest-free loans made by Christiana to Huntington.

The directors of Christiana recognizing the unfairness to Christiana of the resulting ` situation, i. e., the benefiting of the Class B stockholders who were making no contribution to the development of the Huntington land, decided the practical solution was the acquisition by Christiana of the minority Class B stock.

On January 28, 1963 Christiana received an offer from certain Huntington Class B stockholders to sell to it 2200 Class B shares and 39,000 shares of Christiana for $500,000. At a board meeting on that day, at which all the directors were present, the offer to sell was unanimously declined. The reasons for the rejection were that Christiana should acquire all or none of the outstanding 10,000 Class B shares; that Christiana's agreement with the bank lending it money included a prohibition against the purchase of its own securities; and that, by reason of the cash needs of Christiana, the full minority interest represented by the Class B stock should be acquired only in kind, i. e., for Christiana stock.

Fenton, a director of Christiana, who voted with the rest of the board in rejecting the offer, nevertheless was in favor of purchasing the 2200 Class B shares if they could be acquired exclusive of the 39,000 Christiana shares.

Approximately a month later, Fenton, through Banowit, a director of Christiana and a Huntington Class B stockholder, received an offer to sell 2,240 Class B shares and certain Christiana shares. Fenton was not interested in the Christiana shares, and a new offer was made to sell the 2,240 Class B shares at $150 per share. Ultimately, Fenton and his group purchased 1,540 Class B shares, subject to an option to Banowit to repurchase 20%, which was later exercised, and Banowit purchased the remaining 700 shares.

Fenton did not present the offer to the board of Christiana because it had turned down a similar offer only a month before. He did, however, inform the president and chief executive officer of Christiana and asked if he wanted it presented to the board. The answer was in the negative.

Thereafter, the directors of Christiana, in October, 1963, concluded to try to acquire the entire 10,000 Class B shares of Huntington in exchange for 360,000 shares of Christiana. Thereafter, negotiations took place, mainly with Banowit, which culminated on April 9, 1964 with the acquisition by Christiana of all 10,000 Class B shares, including those acquired by Fenton, for 364,000 shares of Christiana.

In this action it is sought to compel Fenton and his group and Banowit to account to Christiana for the profit they made as a result of the purchase by them of 2,240 shares of Class B Huntington stock bought by them in 1963 and ultimately sold to Christiana. The Vice Chancellor held against this contention.

The theory of this action is that Fenton and Banowit, who were directors of Christiana, took to themselves an opportunity to profit which rightfully belonged to the corporation of which they were directors. The leading case upon this subject in this State is Guth v. Loft, 23 Del.Ch. 255, 5 A. 2d 503 (1939). The following language from that decision, we think, governs this case:

"It is true that when a business opportunity comes to a corporate officer or director in his individual capacity rather than in his official capacity, and the opportunity is one which, because of the nature of the enterprise, is not essential to his corporation, and is one in which it has no interest or expectancy, the officer or director is entitled to treat the opportunity as his own, and the corporation has no interest in it, if, of course, the officer or director has not wrongfully embarked the corporation's resources therein. * * *" (5 A.2d at 510–511)

See also Johnston v. Greene, 35 Del.Ch. 479, 121 A.2d 919 (1956) and Equity Corporation v. Milton, 42 Del.Ch. 425, 221 A. 2d 494 (1966).

By reason of the *Guth* case, if a business opportunity comes to a corporate director in his individual capacity, and if the opportunity is not essential to his corporation and in which his corporation has no interest, and if the corporate resources have not been wrongfully embarked therein, the corporate director is free to treat the opportunity as his own.

The facts of this case, as found by the Vice Chancellor and which are fully supported by the record, demonstrate that the offer to Fenton was not a corporate opportunity which he was duty-bound to pass on to Christiana. Initially, the Christiana board had unanimously rejected in almost identical offer only one month before. The objectionable features of this prior offer were the offer to sell for cash and the joining in of Christiana stock to be purchased. Both of these conditions were objectionable to the board. Secondly, the offer to sell was for only a fraction of the minority stock interest. This condition was objectionable to all the directors with the exception of Fenton. Thirdly, the offer to Fenton was for a fraction of the Class B stock for cash. This condition had been previously rejected by the board. Finally, Fenton asked the President of Christiana if he wanted him to submit the offer to the board and was answered "no".

It is clear to us, therefore, that the offer to Fenton was not one in which Christiana had an interest (indeed its board had expressly disclaimed an interest); was not one essential to Christiana, and was not one in which Christiana's resources had been wrongfully embarked.

The judgment below is accordingly affirmed.